**Application of Henry G. SCHIRMER.**
**Pat. Appeal No. 9025.**

United States Court of Customs
and Patent Appeals.
July 19, 1973.

ing Incentive article now espoused. See *Young Associates, Inc. v. United States,* 200 Ct.Cl. ——, ——, 471 F.2d 618, 620–621 (Jan. 1973).

William D. Lee, Jr., Edward J. Hanson, Jr., Duncan, S. C., William T. Bullinger, Washington, D. C., attorneys of record, for appellant. John J. Toney, Duncan, S. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals, adhered to on reconsideration, affirming the rejections under 35 U.S.C. § 103 of all the remaining claims of appellant's application serial No. 768,955, filed September 23, 1968, for "Oriented Blends of Polypropylene and Polybutene-1."[1] We affirm in part and reverse in part.

## The Invention

The invention relates to a process for heat sealing and heat shrinking blends of isotactic polypropylene and polybutene-1 at relatively low temperatures.

Claim 1 is illustrative of the heat sealing process:

1. A process for heat sealing isotactic polypropylene comprising blending 30–90 weight parts of isotactic polypropylene with 10–70 weight parts of polybutene-1 to form a homogeneous blend, forming a film from said blend, biaxially orienting said film, juxtapositioning a portion of said film with a surface, and applying heat to said film at a temperature below the melting point of said polypropylene and below the melting point of said polybutene-1 and between 160 to 250° F. to seal said film.

Claim 2 adds the further step of heat shrinking at temperatures of 180° to 290° F. Claim 3 calls for simultaneous heat sealing and shrinking by submerging the film in boiling water. Claim 4 further restricts the blend composition and limits the heat sealing temperatures to 160 to 210° F and the heat shrinking temperatures to 190 to 230° F. Independent claim 6 recites orienting the film at temperatures between 180°–230° F as well as the heat sealing and heat shrinking steps of claims 1 and 2. Claims 11 and 12 are limited to the extrusion and orientation steps.

## The Rejections

The following references were relied upon:

| | | |
|---|---|---|
| Schaffhausen | U.S. 3,372,049 | Mar. 1968 |
| Blatz | U.S. 3,246,061 | Apr. 1966 |
| Baird et al. | U.S. 3,022,543 | Feb. 1962 |
| Esso | British 809,484 | Feb. 1959 |
| Koppehele | U.S. 3,014,234 | Dec. 1961 |

Schaffhausen discloses a blend of 50% isotactic polypropylene and 50% polybutene-1 which is extruded and then biaxially oriented at 290° F, resulting in a film "somewhat more soft and flexible" than a similar film made from a 1:1 polypropylene-polyethylene blend, but with a lower heat resistance. Blatz discloses a process for producing heat-sealable biaxially oriented polypropylene films, the term "polypropylene films" be-

---

[1]. A continuation of serial No. 355,522, filed March 18, 1964.

ing meant to include films prepared from blends of polypropylene with other polymers and "heat-sealable" indicating the ability to produce a seal at 200° C. Baird et al. teach the production of a biaxially oriented polypropylene film of high shrink energy which is useful as a shrinkable packaging material, said shrinking being done in 96° C water. The British patent (Esso) discloses blends of polyethylene and polyisoolefins which are similarly useful as heat shrinkable films for packaging food, this shrinking also being carried out by dipping the sealed film in boiling water. The Esso blends are an improvement over pure polyethylene in that the latter requires temperatures of 215 to 230° F to obtain adequate shrinking. Koppehele is relied upon merely for its description of conventional extrusion steps prior to orientation.

Claims 1 to 5 were rejected as unpatentable over Schaffhausen in combination with Blatz, Baird and Esso. It was considered obvious to subject the blends of Schaffhausen to the conventional techniques of heat sealing and heat shrinking, said operations being known to be applicable to other biaxially oriented polypropylene compositions. The particular temperatures employed in these steps were deemed to be "inherent" in the compositions. Claims 6 to 8 were rejected over this combination of references augmented by the teachings of Koppehele as to conventional extrusion steps. The temperature range for orientation recited in these claims was similarly considered inherent in the compositions. Claims 11 and 12, being restricted to the extrusion and orientation steps, were rejected over the combination of Schaffhausen and Koppehele.

In sustaining these rejections, the board held the particular temperatures employed for orientation, sealing and shrinking "a matter of routine determination capable of being performed by one of ordinary skill in the art * * *." The absence of any disclosure of criticality for the recited parameters was

also set forth as a determinative factor. A Rule 132 affidavit of the inventor wherein the preparation of 2:1 blends of polypropylene and polyethylene was described and the orientation temperatures averred to be "not significantly lower than those for polypropylene by itself and in some cases * * * actually increased" was found unpersuasive, no actual data or comparative showing with the most relevant blend of Schaffhausen having been presented.

## OPINION

Appellant does not take issue with the conclusion that it would be obvious to subject the Schaffhausen blends to the general processes of orientation, heat sealing and heat shrinking. Instead he contends that it is the temperatures at which these processes are carried out that renders the present claims patentable over the cited prior art. It is urged that no reference teaches or even suggests the unexpectedly low temperatures at which these blends can be oriented, sealed and shrunk. Appellant's contribution is said to be in the discovery that these blends could be subjected to such processes in the boiling water range, thus permitting the use of isotactic polypropylene in heretofore prohibited areas such as food packaging.

We cannot adopt the Patent Office's position that since these temperatures could readily be determined, they cannot render patentable otherwise obvious steps. Nor can the fact that these characteristics are inherent in the compositions negate patentability. The proper question is whether it would have been obvious to one of ordinary skill in the art that these particular blends *could* be subjected to these steps at the claimed temperatures. No reference teaches orientation of appellant's blends at temperatures of 180°–230° F or heat sealing or shrinking at any temperature. Thus it is not a matter of the criticality of the recited ranges but of the obviousness of the applicability of said temperatures.

As pointed out by the board, claims 1 and 2 recite no specific orientation temperature. Furthermore, claim 1 encompasses heat sealing at a temperature of 250° F and claim 2 heat shrinking at 290° F. We would agree that it would have been obvious to subject a composition containing up to 70% of polybutene-1, which component melts at about 251° F, to heat sealing at 250° F. We also find nothing unexpected in heat shrinking at 290° F, Schaffhausen teaching orientation at 290° F and appellant himself having stated that "it is well known * * * that an oriented thermoplastic film will shrink at approximately the same temperature at which it is oriented." Accordingly the 103 rejection of claims 1 and 2 must be affirmed.

Claims 3 to 5, on the other hand, reflect the advantage being stressed by appellant in that they are limited to heat sealing and shrinking at temperatures within the boiling water range, i.e. 160°–212° F or up to 230° F by the inclusion of additives. Although claims 3 and 5 encompass blends containing up to 90% isotactic polypropylene and claim 4 up to 50% of this component, we find no reasonable basis for concluding that these blends would behave similarly to the unmodified polypropylene (of unspecified structure) of Baird et al. or the polyethylene blends of Esso. The 103 rejection of claims 3 to 5 is reversed.

The remaining claims all include specific orientation temperatures, claims 6, 7 and 11 reciting the range of 180°–230° F and claims 8 and 12 the temperature of about 210° F. The solicitor argues that because, as appellant admits, the orientation temperature is usually slightly lower than the melt temperature of a polymer, the temperatures recited herein are the expected values. We cannot agree. In Figure 4 of the specification it is shown that the melting points of the present *blends* only gradually descend from the melting point of pure polypropylene (about 340° F). There is no evidence of a eutectic point. Hence we do not find it even prima facie obvious to employ maximum orientation temperatures of only 210°–230° F. Although we would agree with the board that the Schirmer affidavit adds little weight to the case for unobviousness, we do not consider any further evidence of the unexpected nature of appellant's orientation temperatures necessary.

In summary, the 103 rejection of claims 1 and 2 is affirmed and of claims 3–5, 6–8, 11 and 12 is reversed.

Modified.